**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**JULY SESSION, 1998**

FILED

December 1, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **EMMA JEAN BILBREY,** | **)** | **C.C.A. NO. 03C01-9711-CR-00498** |
| | **)** | |
| Appellant, | **)** | |
| | **)** | |
| | **)** | **CUMBERLAND COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. JOHN TURNBULL** |
| **STATE OF TENNESSEE,** | **)** | **JUDGE** |
| | **)** | |
| Appellee. | **)** | (Post-Conviction) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF CUMBERLAND COUNTY**

FOR THE APPELLANT:

STEVEN C. DOUGLAS
P.O. Box 422
Crossville, TN 38557-0422

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELLEN H. POLLACK
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

BILL GIBSON
District Attorney General

DAVID PATTERSON
Assistant District Attorney General
145 S. Jefferson Avenue
Cookeville, TN 38501

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# **OPINION**

The Defendant, Emma Jean Bilbrey, appeals the trial court's denial of post-conviction relief pursuant to Tennessee Rule of Appellate Procedure 3(b). She asserts that her convictions for first degree murder and theft of property less than $500 should be reversed because she received ineffective assistance of counsel at trial in violation of her Sixth Amendment right to counsel. We affirm the judgment of the trial court.

The procedural history of Defendant's case is unusual. After a full day of testimony, the trial judge became ill and was hospitalized; and another judge completed the trial. Defendant was convicted by a jury on June 1, 1991 of first degree murder and aggravated robbery. A panel of this Court reversed those convictions in State v. Bilbrey, 858 S.W.2d 911 (Tenn. Crim. App. 1993), because the substituted judge had not sufficiently familiarized himself with the record to allow him to exercise his function as thirteenth juror.

In addition, at that first trial, Defendant's lead counsel, James Jones, became ill and was hospitalized for hypertension and early congestive heart failure. Hospital records indicated heavy alcohol consumption by counsel over the course of the preceding days. Counsel's incapacity occurred after a lengthy, 140-page cross-examination of severed co-defendant David Harvey, who testified for the State. Associated second and third counsel, including John Appman, represented Defendant throughout the remainder of the trial.

Defendant, represented by Appman, was retried in January of 1994; and a jury convicted her of first degree murder and theft of property less than $500. We affirmed the convictions, and the supreme court denied permission to appeal. State v. Bilbrey, 912 S.W.2d 187 (Tenn. Crim. App. 1995), perm. to appeal denied (Tenn. 1995). She now petitions for post-conviction relief based upon four assignments of error, all of which, she asserts, constitute ineffective assistance of counsel prejudicing her Sixth Amendment rights.

To be entitled to post-conviction relief on the basis of ineffective assistance of counsel, Defendant must show that her counsel's representation was "deficient" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the first prong, counsel's performance is not deficient when "the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The second prong requires Defendant to show a reasonable probability that the result of the trial would have been different but for the deficient representation. Washington, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If afforded a post-conviction evidentiary hearing by the trial court, a petitioner must do more than merely present evidence tending to show incompetent representation and prejudice; she must prove her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f).[1] When an

_____

[1] Defendant filed her original petition on November 11, 1996 and her amended petition on February 8, 1997, after the effective date of the change in burden of proof. See Tenn. Code Ann. § 40-30-201 (Compiler's Notes).

evidentiary hearing is held, findings of fact made by that court are conclusive and binding on this Court unless the evidence preponderates against them. Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993) (citing Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990)).

## I. MOTION TO SUPPRESS FRUITS OF SEARCH

Defendant's first issue for review is whether her counsel should have moved to suppress the fruits of a search conducted on April 19, 1990. The search was executed pursuant to a warrant that Defendant contends was insufficient to establish probable cause. Specifically, she asserts that the supporting affidavit sworn by Tennessee Bureau of Investigation Agent James Moore failed to identify informants from whom information was obtained or vouch for their credibility. Therefore, she argues, counsel should have (1) moved for identification of the informants, or (2) moved to suppress the evidence obtained from the search. The trial court did not find ineffective assistance of counsel and the evidence does not preponderate against that conclusion.

Defendant cites only one case to support her argument—State v. Lewis, 641 S.W.2d 517 (Tenn. Crim. App. 1982). Because Lewis was decided under the rationale of Aguilar-Spinelli, we assume she contests the sufficiency of the affidavit under what is now the Aguilar-Spinelli-Jacumin line of cases.[2] Such an analysis, in which the affiant must establish both (1) the informant's basis of

---

[2] See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964); State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989).

knowledge, and (2) the reliability of either the informant or the information, is misplaced here, however, because it presumes a confidential, criminal informant.[3]

Here, rather, we need not use the Aguilar-Spinelli-Jacumin criteria because the informant was a private citizen. In his affidavit, Agent Moore recounted, in relevant part:

> One of the persons I interviewed related that he saw David Harvey and a woman with bleached, blond hair in a light blue 1984 Buick Regal automobile at a location which is approximately twenty (20) to thirty (30) feet from where the body was found. I personally know that Emma Jean Bilbrey has bleached, blond hair and drives a light blue, Buick Regal, which is about a 1984 model. This person told me that he saw them on April 14, 1990 between 10:30 PM and midnight at that location. Furthermore, this person reported this information to the law enforcement authorities after learning that the body of U. J. Bryant had been found. He stated that he lived in the Glade Creek community and was concerned about the safety of the citizens there. To my knowledge he has no connection with the family of U. J. Bryant, nor of Emma Jean Bilbrey or David Harvey, but he is simply a concerned private citizen.[4]

According to State v. Melson, 638 S.W.2d 342 (Tenn. 1982), two categories of informants exist—citizen informants and criminal informants. Id. at 354. In that case, our supreme court recognized that informants "'not from the criminal milieu'" are more inherently reliable than professional informants—those who receive some value for their information. Id. at 354-55 (discussing United States v. Bell, 457 F.2d 1231, 1238-39 (5th Cir. 1972); United States v. Rollins, 522 F.2d 160, 164 (2d Cir. 1975) (both holding that the Aguilar-Spinelli test

---

[3] Or, generally, an informant with a criminal history or something of value to gain from providing the relevant information. In this circumstance, the information possesses less inherent reliability and requires external proof.

[4] Although the affidavit recounts information from as many as eleven unnamed informants, we need not address their reliability under either Jacumin or Melson. We find that this portion of the affidavit, placing Defendant at the scene of the crime at the approximate time the crime was committed, was sufficient to permit the magistrate to find probable cause to search Defendant's home for evidence of the robbery and killing.

applies only to criminal informants)); see State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993). Therefore, a lower burden of production is required for an affiant who attests to hearsay information given by a citizen informant; the affiant need not provide facts which indicate reliability or credibility of the informant. Id.; State v. Dick, 872 S.W.2d 938, 943 (Tenn. Crim. App. 1993) ("The reliability of the 'citizen-informant' is judged by a different standard than that of the typical criminal informant or 'tipster.'").

In State v. George, 706 S.W.2d 91 (Tenn. Crim. App. 1985), this Court explained in greater detail why citizen informants are entitled to this presumption of reliability:

> In State v. Melson, our own Supreme Court recognized that a citizen informer who provides information to police officers is entitled to greater belief in his veracity and his credibility than would be a typical police informer who, in some instances, are themselves criminals. Such a person acting openly, in the aid of law enforcement by reporting evidence of a crime to the police, is entitled to greater belief because he has no personal interest in the defendant's arrest, nor does he normally anticipate any personal benefit in exchange for his information.

Id. at 93 (citation omitted); see State v. Smith, 867 S.W.2d 343, 345-48 (Tenn. Crim. App. 1993); State v. Sheila Elaine Thomas, No. 01C01-9304-CC-00131, 1996 WL 75980, at *10 (Tenn. Crim. App., Nashville, Feb. 23, 1996) ("[A]n ordinary citizen is more likely motivated by a concern for society or his own safety, thus, the information carries an indicia of reliability.").

The informant may not enjoy this heightened degree of reliability, however, unless the face of the affidavit furnishes a basis—directly or inferentially—for presuming that reliability is deserved:

> It is incumbent, we think, upon whoever seeks a search warrant to include in the affidavit whether the informational source, named or confidential, qualifies as a citizen informant. Otherwise, the issuing magistrate would not know which standard, <u>Jacumin</u> or <u>Melson</u>, to apply. Whether the affidavit describes the status of the source directly, by implication, or by inference, is immaterial; it must, however, be apparent before the less stringent <u>Melson</u> standard can be used to test the validity of the the warrant.

<u>Smith</u>, 867 S.W.2d at 348; <u>see</u> <u>Cauley</u>, 863 S.W.2d at 417-18; <u>Sheila Elaine Thomas</u>, 1996 WL 75980, at *10 ("[A] search warrant, based upon a statement of the citizen informant, is adequate when the information supplied by the affidavit intrinsically accredits the informant.").

In the case before us, Agent Moore attested that his informant was a "concerned private citizen." In addition, the agent certified that, to his knowledge, the informant had no connection with the victim, Defendant, or the co-defendant. Finally, Agent Moore related that the informant lived in the community where the crime was committed, was concerned for the safety of residents there, and reported his knowledge to law enforcement officials immediately after learning about the crime. The issuing magistrate possessed ample evidence to determine that <u>Melson</u> was the appropriate standard and that this informant was entitled to the presumption of reliability as a private citizen informant.

Furthermore, the affidavit does not fail because Agent Moore did not name the informant, as Defendant claims. This issue was squarely addressed in <u>Melson</u> as well:

> We have no difficulty in holding that the name of the source is not required, as a matter of law, to be disclosed in the affidavit. The reliability of the source and the information must be judged from all of the circumstances and from the entirety of the affidavit. The name of the source is only one factor to be considered.

638 S.W.2d at 356; see Cauley, 863 S.W.2d at 417; Lueptow v. State, 909 S.W.2d 830, 832 (Tenn. Crim. App. 1995) ("[W]hen the information is supplied by an unnamed citizen informant . . . it is presumed reliable."); Smith, 867 S.W.2d at 347 (stating that "the name of the source need not be disclosed in the affidavit").

In this case, Agent Moore was not required to reveal the name of his citizen informant; and judging the entirety of the affidavit, we find that it indicates substantial reliability. According to the law of this state, Defendant's counsel had no duty to challenge this affidavit in a motion to suppress or motion to disclose the informant. Furthermore, if counsel had so moved, Defendant would not have been entitled to suppression of the evidence found as a result of the search. This claim has no merit.

## II. INTRODUCTION OF DAVID HARVEY'S TESTIMONY

Next, Defendant argues her counsel was ineffective, to her prejudice, when he conceded that co-defendant David Harvey's testimony at Defendant's first trial was admissible at her second trial. As discussed, Harvey testified and was exhaustively cross-examined at the initial trial of this matter. The resulting conviction was reversed, however; and upon Defendant's second trial, Harvey refused to testify, asserting his Fifth Amendment privilege against self-incrimination.[5] Defendant now contends that counsel was deficient when he agreed on direct appeal from the second trial that Harvey's testimony was

---

[5] At the time of the second trial, Harvey's post-conviction proceeding was pending.

-8-

admissible as a hearsay exception under Tennessee Rule of Evidence 804(b)(1).[6]

Tennessee Rule of Evidence 804(b)(1) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
. . . Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

Tenn. R. Evid. 804(b)(1). A declarant is "unavailable" under the rule if the witness "[i]s exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement." Tenn. R. Evid. 804(a)(1).

Defendant does not contest that David Harvey was "unavailable" at the second trial within the meaning of Rule 804(a)(1). Rather, she asserts that under Rule 804(b)(1), she did not have a "similar motive to develop the testimony" by cross-examination during the first trial. In particular, Defendant argues in her brief:

Did Mr. Appman [lead counsel at second trial] have an opportunity to cross-examine Mr. Harvey at the first trial? No. At the second trial? No. Did he know Mr. Jones [lead counsel at first trial] was sick when he attempted to cross-examine Mr. Harvey? No, and by then the damage was done.
Did Mr. Appman have a similar motive to develop the testimony? Yes and no.

---

[6] The record provided to this Court does not reflect whether counsel objected to admission of the testimony at trial.

With respect to Defendant's first question—whether Appman had no opportunity to cross-examine Harvey at the first trial, we note that Rule 804(b)(1) requires the "party" to have had an opportunity to develop the testimony. Regardless of whether Appman or another acted as Defendant's representative, she developed Harvey's testimony through cross-examination.

Further, regarding Defendant's third question—whether Appman knew Jones was sick during the cross-examination at the first trial, we find that Appman's knowledge of Jones's illness is irrelevant. Appman served as Defendant's "third-chair" representative during her first trial. If, as Appman testified, the cross-examination of Harvey was deficient, he had both an opportunity and a duty to cause it to be concluded, regardless of the reason for any poor advocacy. However, Jones's conduct at the first trial, in which Defendant's conviction was reversed, does not affect the conviction at her second trial, from which she now seeks relief.

Finally, Defendant relies on her third question—whether Appman had a similar motive to develop the testimony. We agree with Defendant's assertion that he did and disagree with Defendant's assertion that he did not. In both trials, Defendant was charged with first degree murder. Defendant argues, however, that because the supreme court published State v. Brown, 836 S.W.2d 530 (Tenn. 1992), after the first trial and prior to the second trial, "there was a difference in how one would develop the examination of a witness in a murder case." While we agree with this statement, we also agree with Defendant that "[t]he distinction is subtle." If this Court were to adopt Defendant's position, we would fail to recognize a difference in language between "similar" and "same."

-10-

Rule 804(b)(1) does not mandate an identical motive to develop the testimony—only a "similar" motive. We find a similar motive here.[7] Counsel was not ineffective for conceding admissibility of David Harvey's testimony from Defendant's first trial under Rule 804(b)(1).

## III. CROSS-EXAMINATION OF DAVID HARVEY

### A. Attorney Jones's Cross-Examination

Defendant argues her third issue in the alternative. First, she asserts that she suffered ineffective assistance of counsel due to a deficient performance by Attorney Jones during the cross-examination of David Harvey in her first trial, resulting in prejudice to her during the second trial because of Harvey's unanticipated refusal to testify. We find no merit in this argument.

This Court reversed Defendant's first conviction because the trial judge failed to make himself adequately familiar with the proceedings, resulting in his inability to function as the thirteenth juror. Thereafter, Defendant was entitled to and received an entirely new trial. This Court can no longer review allegations of error in the initial trial of this matter. Although it may be unfortunate that Harvey could not be cross-examined in the second trial, the relevant issue at the second trial was whether Harvey's prior testimony was admissible as evidence. Counsel's effectiveness in cross-examining Harvey at the first trial is relevant to the resolution of this issue, but ineffective assistance of counsel at the first trial will not provide a basis for post-conviction relief from the conviction in the second trial.

---

[7] Likewise, we find no violation of the Confrontation Clause, a related matter. However, because Defendant did not complain of such a violation in this petition, we need not address this issue.

*B. Attorney Appman's Decision Not to Introduce Testimony*

Alternatively, Defendant argues that Appman, counsel at the second trial, should have introduced and read Harvey's cross-examination from the first trial into the record of the second trial. As previously mentioned, Appman considered the cross-examination performed by Jones to be unskillful—weak and lengthy. Though the State introduced Harvey's direct testimony from the initial trial, Appman decided to waive reading the cross-examination. We find no ineffective assistance of counsel in this determination.

With respect to rationalization of attorney conduct in an effective assistance of counsel case, the Supreme Court of the United States instructed,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Strickland v. Washington, 466 U.S. 668, 689 (1984) (citation omitted). The courts of this state also have long "recognized that it is not our function to 'second-guess' tactical and strategical choices pertaining to defense matters or measure a defense attorney's representation by '20/20 hindsight' when deciding the effectiveness of trial counsel." Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993) (quoting Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

At Defendant's second trial, counsel was faced with a decision of judgment: to introduce a cross-examination that he considered ineffectual or to waive cross-examination. From the testimony at Defendant's evidentiary hearing, we find that counsel's primary objection to the examination was its length and uselessness. Counsel did not cite Jones's inability to make points that should

have been highlighted; rather, he stated that Jones should have ended the examination much sooner. Furthermore, the second trial court permitted Defendant to introduce and play an audiotape recording of David Harvey in which he recanted much of his former testimony. Therefore, we find the decision not to introduce the cross-examination reasonable and well within counsel's strategical discretion.

## IV. CROSS-EXAMINATION OF DELORES TANNER

Defendant's final issue concerns counsel's allegedly ineffective cross-examination of Delores Tanner, a witness for the State. Tanner, bartender at the Red Dog Saloon, reported to Tennessee Bureau of Investigation Agent Moore that David Harvey told her he shot a man seven times and asked her not to tell Defendant. Tanner apparently did not testify inconsistently at trial; she simply did not mention this portion of her prior statement. Defendant argues that her testimony would have contradicted the State's theory—and David Harvey's direct testimony—that Defendant not only had knowledge, but also participated in the killing by firing several of the bullets that hit the victim.

At the evidentiary hearing, counsel stated that he did not believe the testimony would have been beneficial to the defense. From our review of the record, we find no deficiency in failing to elicit Tanner's testimony of statements made by Harvey. Furthermore, the Defendant has failed to demonstrate prejudice on this issue. Defendant's argument lacks merit.

Because we find no merit in Defendant's claims of ineffective assistance of counsel, we affirm the judgment of the trial court denying the Defendant post-conviction relief.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
JOSEPH M. TIPTON, JUDGE